Bead, J.
The judgment under which the levy was made was-against Hutchinson, Bingham & Co., the property levied upon is claimed to belong to Hutchinson, & Co., a new firm composed of some of the members of the firm of Hutchinson, Bingham & Co., which had been dissolved. The 9,000 bushels of wheat levied upon, was furnished under the contract with Johnson, and was no part of the assets of the old firm of Hutchinson, Bingham & Co.
The questions in the caso are: 1. Was Johnson a partner?' *366 .2. Under the contract was the wheat the property of Johnson or of Hutchinson & Go?
If Johnson was not a partner and the wheat under the contract was the property of Johnson, it renders it unnecessary to consider, the question respecting the levy upon the partnership property to satisfy the debt of an individual partner, and the rule of damages in case the other partner replevy it, and the action be determined against him, as to whether it shall be the full value of the property replevied, or only the residuary .interest of the debtor partner, after tho settlement of the partnership accounts.
The two questions which we propose to consider, and *which, in our opinion, determines this case, depend entirely upon construction of the contract.
By the terms of the contract Johnson agrees fully to stock the ■Cleveland Mills from the 16th day of August to the 15th day of November, 1842; Hutchinson & Co., in connection with, an agont of Johnson’s, were to purchase wheat.
This wheat was to be converted into flour by Hutchinson & Co., at the Cleveland City Mills, and sold at Cleveland, Buffalo, or •shipped to Johnson at New York, as the Hutchinsons might think best for their interest.
All the proceeds of sale were to go at once into the hands of Johnson or his agents.
The Hutchinsons agree to bring on their milling assets as fast as possible into the milling business, to be applied to discharge their indebtedness to Johnson.
All flour sold at the mill for carrying it on, or for tho support of Hutchinson’s family or Johnson’s agent, to be accounted for.
Johnson to receive 2J per cent, on all sales except the flour retailed at the mills.
On the expiration of the contract the proceeds arising from the sale of flour, are to be applied : 1. To repay for wheat purchased; '2. To liquidate the balance due Johnson; 3. The balance to be paid to the Hutchinsons.
Now this is not a contract of partnership, but a mere mode by which they may appropriate their labor and the use of their mills to the discharge of their debt to Johnson, with tho advantage of ■the rise of the market. The Hutchinsons agree that they will ■employ their own labor and the use of their mills in converting ithe wheat of Johnson into flour and shipping it, for the sum which *367 can be realized for the flour, after deducting the cost of the wheat and 2J per eent. on sales. Now what more is this than a mere compensation for labor expended and the use of the mills. There is one division of property between the Hutchinsons and Johnson. The Hutchinsons take the whole property after deducting 2| per cent, on the sales, which may be regarded *as compensation, or part compensation, to the agent to be employed by Johnson. The bare fact that the compensation is uncertain, or to be taken out of the profits, or to depend upon the profits, does not constitute a partnership.
This is a usual mode of compensation to stimulate industry, effort, and diligence, familiar to the books.
We can not under the contract regard the money to be paid for the wheat as a loan or advancement to the Hutchinsons, so as to constitute tho wheat purchased their property. Johnson agreed to stock the mills—he did not agree to advanco money to the Hutchinsons. In the purchase of the wheat he employed an agent who was to act in conjunction with the Hutchinsons. His part of the contract was to stock the mills with wheat; the wheat was his property, the Hutchinsons were to convert it into flour; they were simply bailees, and their right of possession was only one of bailment.
In this view, the Hutchinsons had no possessory legal right to the wheat subject to levy. They could not dispose of it to a third person, so as to defeat the right of' the bailor. If a third person should seize upon it, it would not deprive the bailor of his property and right of possession, nor does it alter the bailor’s right that the property was seized upon to satisfy the debt of the bailee. The fact that the bailee could not maintain replevin in his own name against the sheriff, the property having been seized in exe. cution to satisfy a debt against him, does not impair in any degree the right of tho bailor. Judgment for plaintiff.